UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

No. 03-10344-DPW

UNITED STATES OF AMERICA

v.

GRAHAM JAMES MARSHALL
and
BRUCE GORDON HILL

### DEFENDANT BRUCE GORDON HILL'S MOTION TO DISMISS COUNTS ONE, THREE, FOUR AND SIX OF THE SECOND SUPERSEDING INDICTMENT

The statute of limitations for Counts One, Three, Four, and Six expired on May 7, 2004. When compared against the earlier indictment, it is abundantly clear that the Second Superseding Indictment-- issued well after the limitations period expired -- materially broadened and/or substantially altered those counts. As such, the Second Superseding Indictment does not "relate back" to the prior timely indictment, and Defendant Bruce Hill therefore respectfully requests that this Court dismiss Counts One, Three, Four and Six.

I.  **RELEVANT FACTS AND PROCEDURAL HISTORY**

Between March of 1994 and March of 1999, Hill was the Vice-President, Secretary, and General Counsel of Inso Corporation, Inc. Inso was a publicly traded corporation whose primary source of revenue stemmed from the sale of software licenses

1

and software maintenance fees, as well as royalties received in connection with licensing arrangements.

Because the merits of this motion focus on the content and timing of the indictments filed in this case, this section will similarly focus:

### A. The Original Indictment

The grand jury first issued an indictment in this case on November 12, 2003 ("the Original Indictment"). The Original Indictment named only one defendant: Graham James Marshall, Inso's Vice President and General Manager of Inso's Electronic Publishing Solutions Division between January, 1997 and April, 1999.

In short, the Original Indictment alleged that Marshall orchestrated a fraudulent "sale" of software to a Malaysian company -- thereby improperly inflating Inso's revenues for the third quarter of 1998 -- and that he knowingly disseminated fraudulent information about Inso's revenues. It further alleged, inter alia., that Marshall intentionally and knowingly caused Inso to materially overstate its revenue in various filings with the SEC, caused Inso to falsify books and records, and circumvented Inso's internal accounting controls.[1]

---

[1] The Original Indictment, sounding in eight counts, charged Marshall with fraud in connection with the offer, purchase or sale of securities (in violation of 15 U.S.C. §§ 78j(b), 78ff, and 77q(a)); making false statements in a quarterly filing with the SEC (in violation of 15 U.S.C. §§ 78m(a) and 78ff); making a false statement in an SEC registration statement (in violation of 15 U.S.C. § 77x); circumventing internal accounting controls (in violation of 15 U.S.C. § 78m(b)(5)); wire fraud (in violation of 18 U.S.C. § 1343); making an international monetary transaction to promote fraud (in violation of 18 U.S.C. § 1956(a)(2)(A)); and perjury (in violation of 18 U.S.C. § 1621).

2

B.   **The Superseding Indictment**

On May 5, 2004, the grand jury issued a Superseding Indictment, again naming Marshall as a defendant. It also added Hill as a defendant. See Exh. A.

Count One of the Superseding Indictment alleged that, between September of 1998 and January of 1999, Marshall and Hill committed fraud in connection with the purchase or sale of securities (in violation of 15 U.S.C. §§ 78j(b) and 78ff(a)). The gravamen of the factual allegations comprising Count One is described as follows:

> [I]n or about September and October 1998, defendants MARSHALL and HILL, together with others known and unknown to the grand jury, arranged to prepare and to obtain a signature on a purchase order, dated September 30, 1998, which purported to reflect a sale of $3,200,000 in software licenses [from Inso] to a Malaysian business. A major objective of the efforts to obtain the September 30 purchase order was to create the false appearance that Inso had sold the software licenses during the third quarter of 1998.
>
> [I]n or about November 1998 and January 1999, defendants MARSHALL and HILL, together with others known and unknown to the grand jury, took a series of steps to create the appearance that the Malaysian business paid Inso $3,000,000 for the September 30 Purchase Order and to conceal material facts about the circumstances surrounding the creation and receipt of the purchase order as well as Inso's subsequent receipt of "payment" for that purchase order.
>
> [I]n late December 1998, defendant HILL entered into an arrangement whereby the owner of the Malaysian business agreed to pay Inso $3,000,000 in exchange for $4,000,000 in letters of credit to be provided by Inso's bank.
>
> A major objective of the cover-up efforts during November 1998 through January 1999 was to conceal the fact that significant revenues which Inso had publicly reported for the third quarter of 1998 – namely approximately

3

        $2,996,000 in revenues attributable to the September 30
Purchase Order – were not collectible, and to avoid
canceling or reversing those revenues.

Exh. A at ¶¶ 14-18.

Counts Three and Four charged Mr. Hill with wire fraud, in violation of 18 U.S.C. § 1341.[2] Count Six charged Hill, as a corporate officer of Inso, with making material omissions and false statements to an accountant, in violation of 15 U.S.C. §§ 78m(b)(5) and 78ff.[3] Finally, Counts Eight and Nine charged Hill with perjury, in violation of 18 U.S.C. § 1621.[4]

### C. The Second Superseding Indictment

On September 15, 2004 -- more than four months after the statute of limitations for Counts One, Three, Four and Six expired -- the prosecution returned to the grand jury, seeking (and obtaining) a Second Superseding Indictment. See Exh. B. Although the first thirty pages of the Second Superseding Indictment mirror the first thirty pages of the Superseding Indictment, the Second Superseding Indictment alleged several new and material facts, under the heading "Sentencing Allegations." See Exh. B at pp. 31-33.

Specifically, the Second Superseding Indictment alleged that "[t]he loss caused by the offense and by acts and omissions that defendant Hill aided, abetted or willfully

---

[2]     Count Three alleged that Hill violated the wire fraud statute by faxing a copy of a check from the Malaysian company to Boston, all the while knowing that the check would not clear. Count Four alleged that Hill violated the wire fraud statute by having telephone conversations between Malaysia and Boston where he made arrangements to provide the Malaysian businessmen with the letters of credit.

[3]     Count Six alleged that Hill, directly and indirectly, omitted to tell accountants material facts about the Inso/Hong Hong transaction.

[4]     Because the statute of limitations for Counts Eight and Nine has not yet expired, they are not subject to dismissal.

caused, that were reasonably foreseeable to him and that were part of the same course of conduct and common scheme, was greater than $80,000,000...."[5] See id. at ¶¶ 104(a) and 106(a). Importantly, neither of the prior indictments made any mention whatsoever of a loss, let alone one of such magnitude.

The Second Superseding Indictment also alleged, for the very first time, that:

- "[Count One] involved more than minimal planning, as described in U.S.S.G. § 2F1.1(b)(2)[;]"

- "Defendant Hill abused a position of trust and used a special skill in a manner that significantly facilitated the commission and concealment of the offense, as described in U.S.S.G. § 3B1.3[;]" and

- "Defendant Hill willfully obstructed or impeded, and attempted to obstruct and impede, the administration of justice during the course of the investigation of the offense and the obstructive conduct related to the offense, as described in U.S.S.G. § 3C1.1."

Id. at ¶¶ 104 (b)-(d); 106 (b)-(d).

And, although those new allegations appear at the end of the Second Superseding Indictment, each allegation is incorporated into Counts One, Three, Four and Six. See id.

## II. ARGUMENT

As discussed below, Counts One, Three, Four and Six of the Second Superseding Indictment were filed after the statute of limitations expired. And, because the addition of the "Sentencing Allegations" in the Second Superseding Indictment substantially amended and/or materially broadened each of these counts, they do not relate back to the earlier indictment. Therefore, this Court should dismiss Counts One, Three, Four and Six.

### A. Counts One, Three, Four, and Six of The Second Superseding Indictment Was Filed After the Statute of Limitations Expired.

---

[5] Presumably, the loss alleged was the loss to Inso's shareholders.

Statutes of limitations "limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of [allegedly criminal] acts." Toussie v. United States, 397 U.S. 112, 114-15 (1970). They "are to be liberally interpreted in favor of repose;" United States v. Ratcliff, 245 F.3d 1246, 1252 (11th Cir. 2001); and apply "to all indictments, whether they are original indictments, superseding indictments, or new indictments." United States v. Italiano, 894 F.2d 1280, 1282 (11 Cir.), cert. den., 498 U.S. 896 (1990).

Where charges are filed after the statute of limitations has expired, they must be dismissed. See id. The charges set forth in Counts One, Three, Four and Six are all governed by the five year statute of limitations set forth in 18 U.S.C. § 3282. Here, the statute of limitations for each of those Counts expired on May 7, 2004.[6]

**B.    The Second Superseding Indictment Substantially Altered and/or Materially Broadened Counts One, Three, Four and Six.**

"[T]he statute of limitations issue becomes more complex when the government files more than one indictment against a criminal defendant...." United States v. Gigante, 982 F.Supp. 140, 155 (E.D.N.Y. 1997), aff'd, 166 F.3d 75 (2d Cir. 1999). And, as is true here, the issue becomes even more complex where the prosecution obtains a superseding indictment after the statute of limitations expires. To determine whether such a superseding indictment relates back to an earlier and timely indictment -- and therefore survives dismissal -- a Court must consider whether the superseding indictment "materially broadens [or] substantially amends the charges against the defendants."

---

[6] The statute of limitations on these counts would have expired earlier, but for tolling agreements executed by Hill and the prosecution.

6

United States v. O'Bryant, 998 F.2d 21 (1st Cir. 1993).[7] If so, the Court must dismiss the counts so impacted. See id.; see also United States v. Zvi, 168 F.3d 49, 54 (2d Cir. 1999), cert. den., 528 U.S. 872 (1999) ("A superseding indictment will relate back to the date of the original indictment only if the superseding indictment does not "broaden or substantially amend the original charges.") (citation omitted; emphasis added).

The salient inquiry requires this Court to carefully review the Second Superseding Indictment and then compare it to the Superseding Indictment. See O'Bryant, supra. In deciding whether a superseding indictment materially broadened and/or substantially altered an earlier indictment this Courts may consider a number of factors, such as:

- Does the Second Superseding Indictment create the potential for increased punishment?

- Do the indictments set forth different charges?

- Does the Second Superseding Indictment recite new factual allegations?

- Do the allegations of the Second Superseding Indictment set forth additional elements of proof?

- Do the allegations of the Second Superseding Indictment require the introduction of new or different evidence?

- Do any changes between the two indictments increase Hill's burden of mounting a defense?

See, e.g., United States v. Maling, 737 F.Supp. 684, 691 (D.Mass. 1990); Italiano, 894 F.2d at 1282; Zvi, 168 F.3d at 55; United States v. Gerstner, 548 F.Supp. 348, 349 (S.D.N.Y. 1982).

---

[7] Other Circuits follow the same or a similar test. See, e.g., United States v. Genga, 808 F.2d 1 (2d Cir. 1986); United States v. Friedman, 649 F.2d 199 (3d Cir. 1981); United States v. Lash, 932 F.2d 1077 (6th Cir. 1991); United States v. Pacheco, 912 F.2d 297 (1990); United States v. Ratcliff, 245 F.3d 1246 (11th Cir. 2001).

Application of these factors here can lead to only one result: dismissal.

1. **The Second Superseding Indictment Exposes Hill To Much More Drastic Punishment.**

The prosecution's motivation for seeking the Second Superseding Indictment is obvious: it decided to supersede so that it could exact the most extreme punishment available in the event of a conviction. That is, the prosecution simply sought the new indictment because it believed that Blakely v. Washington, __ U.S. __, 124 S.Ct. 2531 (2004), would prevent[8] a sentencing court from applying the sentencing enhancements highlighted in the Second Superseding Indictment. Equally obvious is that, in the event of a conviction on counts One, Three, Four and/or Six, the allegations of the Second Superseding Indictment drastically increase the potential punishment Hill faces.

Before the prosecution obtained the current indictment, and in light of Blakely, Mr. Hill faced a maximum sentence of six months. See, e.g., U.S.S.G. § 2F1.1 (1999) (setting forth a base offense level of 6 for Counts One, Three, Four, and Six). But the Second Superseding Indictment alleges that Hill's actions warrant several substantial enhancements, i.e., under U.S.S.G. §§ 2F1.1(b)(1)(5); 2F1.1(b)(2); 3B1.3; and 3C1.1. See Exh. B at ¶¶ 104 (a)-(d); 106 (a)-(d). In fact, if the prosecution succeeds in proving

---

[8] Although Blakely did not directly concern the United States Sentencing Guidelines ("Guidelines"), since it was decided, many courts across the country have held that Blakely applies with equal force to the Guidelines, and therefore, courts may not increase a defendant's sentence if that increase is dependent upon facts neither stipulated nor found by a jury beyond a reasonable doubt. See, e.g., United States v. Booker, 375 F.3d 508 (7th Cir.), cert. granted, __ U.S. __, 125 S.Ct. (2004); United States v. Ameline, 376 F.3d 967 (9th Cir. 2004); United States v. Fanfan, 2004 WL 1723114 (D.Me.), cert. granted, __ U.S. __, 125 S.Ct. 12 (2004). Other courts have reached the opposite conclusion. See, e.g., United States v. Mincey, 380 F.3d 102 (2d Cir. 2004); United States v. Pineiro, 377 F.3d 464 (5th Cir. 2004); United States v. Koch, 383 F.3d 435 (6th Cir. 2004). The United States Supreme Court recently heard arguments in Booker and Fanfan, but has not yet issued its decisions.

each "Sentencing Allegation," Hill faces a potential sentence of 188 months, a potential sentence of more than **thirty times** that which he faced under the Superseding Indictment.[9]

Under these circumstances, this Court can conclude only that the charges in Counts One, Three, Four and Six against Hill have been materially broadened and/or substantially altered and, therefore, must be dismissed. See e.g., Zvi, 168 F.3d 49 (holding that superseding indictment must be dismissed because, inter alia, it "exposed the defendants to a potentially much greater sentence.")

### 2. The Superseding Indictment Did Not Give Hill Adequate Notice of the New Allegations.

The policy underlying statutes of limitation "is grounded in concepts of due process. A timely indictment serves notice on named defendants by apprising them that they will be called to account for their activities and should prepare a defense." O'Bryant, 998 F.2d at 24. Statutes of limitations serve an extremely important function: they are "mechanisms to guard against possible ... prejudice resulting from the passage

---

[9] These calculations are based upon the 1999 version of the Guidelines. See U.S.S.G. § 2F1.1 (b)(1)(5) (applicable to Counts One, Three, Four and Six) (instructing court to increase base offense levels by 24 if the loss was more than $80,000,000.00; U.S.S.G. § 2F1.1 (b)(2) (applicable to Counts One, Three, Four and Six) (instructing court to add 2 levels if the offense involved more than minimal planning); U.S.S.G. § 3B1.3 (applicable to Counts One, Three, Four and Six) (instructing court to add 2 levels if a defendant abused a position of trust and/or used a special skill in a manner that significantly facilitated the commission or concealment of the offense); and U.S.S.G. § 3C1.1 (applicable to Counts One, Three, Four and Six) (instructing court to increase by 2 levels if the defendant willfully obstructed or impeded the administration of justice).
Assuming Hill's criminal history category to be level I, a total offense level of 6 falls into Zone A and a sentencing range of 0-6 months. Yet, if the prosecution were to obtain a conviction under Counts One, Three, Four or Six and prove the "Sentencing Allegations," Hill's total offense level would jump to at least 34, which falls into Zone D and carries a sentencing range of 151-158 months.

9

of time between crime and arrest or charge." United States v. Marion, 404 U.S. 307, 322 (1971).

"[N]otice is the touchstone in deciding whether a superseding indictment substantially changes the original changes." Genga, 808 F.2d at 3. "In determining whether a defendant had notice of the charges against him, [this Court should] not confine [its] inquiry to the statues under which the defendant was charged." Ratcliff, 245 F.3d at 1253. Rather, this Court must also consider whether the Second Superseding Indictment contains new allegations of fact. See id.; see also Italiano, 894 F.2d at 1282.

Where, as here, an indictment is filed after the statute of limitations expired, and it contains new allegations of material facts, it is subject to dismissal. For example, in O'Neil, 463 F. Supp. 1205, the Court granted the defendant's motion to dismiss because the superseding indictment alleged new facts, even though much of the two indictments were identical. In fact, both indictments charged the same exact offense (making a false statement on a loan application) on the same date and on the same loan application. The only differences were the misrepresentations themselves. See id. at 1206-07. Nevertheless, the O'Neil Court rejected the prosecution's claim that the superseding indictment related back because the indictments alleged "approximately the same facts," reasoning that the similarities were

> not "approximate" enough to satisfy a statute of limitations, designed to put a defendant on notice, within a specified time, of the allegations against which he must defend himself. The charge in the first indictment contains no mention of the specific misrepresentations charged in the second indictment.

Id. at 1207.

The same is true here. The Second Superseding Indictment includes new and material factual allegations falling into four general categories, each of which is incorporated into Counts One, Three, Four and Six: the amount of loss attributable to Hill's conduct; whether Hill engaged in "more than minimal planning;" whether Hill abused a special skill and/or position of trust; and whether Hill obstructed justice. Without a doubt, the Superseding Indictment did not provide Hill notice that it intended to present evidence relating to these allegations to a jury. Further, none of these allegations were mentioned, even in passing, in the Superseding Indictment. Finally, like in O'Neil, these new allegations are material to the prosecution's case, as well as to Hill's defense. Compare O'Bryant, 998 F.2d 21.[10]

Relatedly, the Second Superseding Indictment's addition of the "Sentencing Allegations" dramatically alters the elements that the jury must consider. Such "changes cannot be characterized as either trivial or innocuous[,]" even if the factual allegations were part of the same scheme alleged in the Superseding Indictment. Zvi, 168 F.3d at 55

---

[10]   In O'Bryant, the differences between the two indictments were slight; both charged violations of the same statute and described the same conspiracy. There were only two differences: in one instance, the span of the conspiracy in the superseding indictment was one year shorter; in the other, the superseding indictment simply provided more detail in terms of the overt acts. The First Circuit reasoned that such differences did not warrant dismissal because, as to the shortening of the conspiracy's length, the change narrowed the charges, not broadens them. And as to the overt acts, the Court reasoned, the superseding indictment simply provided more detail, and "the first indictment put appellant on fair notice anent the conduct for which he must answer and therefore, tolled the statute of limitations for the strikingly similar charges the superseding indictment." Id. at 25.

This case presents a stark contrast: here, the changes in the indictments involve different elements, increase the potential penalties, and substantially increase Hill's burden of mounting a defense.

(holding that, even if new counts alleging money laundering were part of the same scheme to defraud alleged in the earlier indictment, the money laundering counts were time barred because they "required the defendants to defend against additional charges that [inter alia,] ... contained different elements...."); see also Maling, 737 F.Supp. at 696 ("a court should carefully review the charges of a superseding indictment to determine whether the new counts involve ... [inter alia,] additional elements of proof....").

Here, the Second Superseding Indictment interjects a multitude of new elements into the case. For example, to prove its "Sentencing Allegations," the prosecution must prove the following elements:

- As to loss, the prosecution must prove that (1) the loss totaled more than $80,000,000.00; (2) Hill aided, abetted, or willfully caused the loss; (3) the loss was reasonably foreseeable to Hill; and (4) the entire loss came out of a single scheme or common plan. See Exh. B at ¶¶ 104 (a); 106 (a).

- To prove its allegations that the offense "involved more than minimal planning," the prosecution will have to prove that (1) Hill engaged in more planning that is typical for commission of the offenses in their simplest forms; (2) Hill took significant and affirmative steps to conceal his illegal conduct; or (3) Hill engaged in repeated acts over a period of time (unless each instance was purely opportune). See United States v. Milligan, 17 F.3d 177, (6th Cir. 1994).

- To prove its allegation that Hill obstructed justice, the prosecution will have to prove that Hill (1) willfully (2) obstructed or impeded or attempted to obstruct or impede (3) the administration of justice (4) during the investigation, and (5) Hill's obstructive conduct related to the offense of conviction or relevant conduct. See U.S.S.G. § 3C1.1.

- To prove its allegation that Hill's conduct warranted an enhancement under U.S.S.G. § 3B1.3, the prosecution must prove that (1) Hill occupied a position of trust (i.e., that he had professional discretion or that his position gave him the freedom to commit the offense); (2) had a special skill; and (3) that the position of trust and special skill substantially contributed to

12

           facilitating the crime. See U.S.S.G. § 3B1.3 and comments
           thereto; United States v. Pardo, 25 F.32d 1187 (3d Cir. (1994).

In sum, the Superseding Indictment did not give Hill notice of the "Sentencing Allegations," nor did it provide him notice that a jury would be asked to consider the Guidelines provisions and their corresponding elements. Put another way, the Superseding Indictment did not inform Hill "that he would have to account for essentially the same conduct with which he was ultimately charged in the [second] superseding indictment." O'Bryant, 998 F.2d at 24.

    3.    **The New Allegations Markedly Increase the Burdens of Hill's Defense and Requires the Introduction of Additional Evidence.**

Obviously, in light of its new allegations, the Second Superseding Indictment requires Hill to radically change his defense strategy. Indeed, litigating the issue of loss alone, before a jury, will dramatically increase the burden of Hill's defense. See Ratcliff, 245 F.3d at 1254 (holding that dismissal of a superseding indictment was warranted because the superseding indictment added new allegations of fact which "dramatically altered the case against which Ratcliff had to defend himself.") This is so because Hill is now required -- at trial -- to defend against, inter alia., allegations that his actions caused a loss of more than $80,000,000.00. He will have to hire his own expert witness(es), cross-examine the prosecution's expert(s), and explain to the jury complex issues concerning the economic consequences of his alleged acts.

Also, to prove these new allegations beyond a reasonable doubt to a jury, the prosecution now must present additional evidence to the jury. To see what evidence will be necessary to prove such allegations, this Court need look no further than the case of United States v. Vatcher, (Docket No. 03-CR-10270-RCL). See Exh. C. Like Hill,

13

Vatcher was an officer of Inso. And, similar to this case, the prosecution claimed that Vatcher was responsible for loss of $40,000,000.00 to $80,000,000.00.[11]

But the Vatcher information does not mention Mr. Hill, nor does it mention the Hong Hong transaction. In fact, Hill had nothing to do with any of the conduct attributed to Vatcher. Instead, the gist of the allegations against Vatcher are that, over each quarter (as opposed to just the third quarter alleged in this case), and on six different occasions in 1998, Vatcher "made, and caused others to make, false and misleading reports that he and others in his International sales group had completed certain agreements, totaling more than $3.6 million, for the sale of Inso products (the "phony sales")."

Because Hill was not involved in the incidents described in the Vatcher information, litigating the issue of loss is bound to be an arduous one, and quite possibly bewildering to a jury. For example, a jury must wade through all of the evidence and decide whether Hill bears responsibility for the entire loss, or just a portion thereof; it must decide whether Hill should have reasonably foreseen the losses caused by Vatcher's conduct; whether Vatcher and Hill were involved in the same conspiracy and, if so, the extent to which Hill was involved; when Hill joined the conspiracy, and the like. See, e.g., U.S.S.G. § 1B1.3.

---

[11] In that case, the prosecution filed an information against Richard Vatcher, Inso's former Vice-President of International Sales. The information charged Vatcher in five counts: count one charged fraud in connection in the purchase/sale of securities, in violation of 15 U.S.C. §§ 78j(b) and 78ff(a); and counts two through five charged him with making false filings with the SEC in violation of 15 U.S.C. §§ 78m(a) and 78ff. In late July 2003, Vatcher agreed to plead guilty to all five counts; he also agreed to cooperate with the prosecution, for which the prosecution promised to file a motion for a downward departure under U.S.S.G. § 5K1.1. In the plea agreement, the prosecution asserted, and Vatcher agreed, that the loss was greater then $40,000,000 but less then $80,000,000.

Simply put, the Second Superseding Indictment transformed a typical white collar criminal case into an extremely complex white collar criminal case. And that complexity means Hill's ability to mount a defense has been burdened substantially.

### III. **CONCLUSION**

Allowing the prosecution to proceed with the Second Superseding Indictment places Hill at an unfair advantage, particularly since the government investigation into this case reaches back to more than five years before the prosecution obtained the Second Superseding Indictment. Hill, however, did not receive his first notice of the new allegations in the Second Superseding Indictment until almost six years after the events in question. After the passage of so much time, the likelihood that exculpatory evidence has been destroyed and memories faded is exactly what the statute of limitations was designed to avoid.

WHEREFORE, Defendant Bruce Gordon Hill respectfully requests that this Court dismiss Counts One, Three, Four and Six.

Respectfully submitted,

*Richard Egbert*
Richard M. Egbert, BBO 151800
Patricia A. DeJuneas, BBO 652997
LAW OFFICE OF RICHARD M. EGBERT
99 Summer Street, Suite 1800
Boston, MA 02110
Tel: 617.737.8222

## CERTIFICATE OF SERVICE

    I, Richard M. Egbert, hereby certify that I caused the foregoing Notice of Appearance to be served upon Attorney Paul Levenson, by first class mail, this 16th day of December, 2004.

                                                              _____
                                                              Richard M. Egbert