UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 FEB -9 P 12: 10

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| United States of America, | ) |
| | ) |
| v. | ) Cr. No. 03-10344-DPW |
| | ) |
| Bruce Gordon Hill, | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF MOTION
## TO QUASH OR MODIFY SUBPOENA

On January 26, 2005, Wilmer Cutler Pickering Hale and Dorr LLP ("Wilmer Hale" or the "firm") received a subpoena from the defendant to produce on February 10, 2005 a record keeper and a voluminous quantity of documents related to a complex investigation conducted by the firm. Pursuant to Fed. R. Crim. P. 17(c)(2), Wilmer Hale moves to quash or modify three of the four categories sought in the subpoena as unreasonable and oppressive, for the reasons hereafter set forth.

Although the subpoena contains only four requests, two of them (Requests 1 and 3) are so sweeping and overbroad in their scope and definition as to constitute an unreasonable and oppressive burden on Wilmer Hale. In addition, these Requests seek attorney-client privileged and work product protected material. Finally, Request 4 involves a further lengthy and burdensome search of the same voluminous documentation encompassed by Requests 1 and 3 in order to locate a single document.

I.  **Requests One, Three and Four Are Unreasonable and Oppressive And Seek Documents Protected By The Attorney Client Privilege And Work Product Doctrine.**

Request #1 seeks:

> [A]ll documents, in unredacted form, stemming from your investigation of Inso's revenue recognition practices and/or financial reporting in fiscal year 1998, including those relating to interviews you conducted of Inso's officers, directors, board members, and/or employees in December 1998 and 1999[.]

(Emphasis added.)

Request #3 seeks:

> All documents and/or communications, in unredacted form, that you received in 1998 and 1999 from Ernst & Young which concern Inso's revenue recognition practices and/or financial reporting in fiscal year 1998[.]

(Emphasis added.)

The definition of "documents," as demanded by the subpoena is:

> The term "document" includes writings, notes, reports, policies, memoranda, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, if necessary by the respondent through detection devices into reasonably useable form. A draft or non-identical copy is a separate document within the meaning of this term.

The definition of "communication," as demanded by the subpoena is:

> The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) by any means, at any time or place, under any circumstances, including any transfer of data from one location to another by written, computer, electrical, electronic, facsimile, or similar means, including all correspondence, letters, notices, telegrams, messages or memoranda or other records of conversations, meetings or conferences.

Preliminary investigation reveals that the possible documents described in these all encompassing categories and definitions are contained in approximately thirty boxes covering

more than four years. These documents would have been generated or collected in connection with a complex investigation into revenue recognition practices conducted by Wilmer Hale and forensic accountants at Ernst & Young LLP ("E&Y") who worked under the lawyers' direction. The investigation, that began in January 1999, involved collection and review of documents and emails; interviews of 24 employees and a customer; communications and meetings with management and the Board of Directors; analyses of documents and interviews; and communications between and among counsel and the forensic accountants, to name a few.

Shortly after the investigation began, the Securities & Exchange Commission ("SEC") initiated an investigation on the same subject matter spanning several years and including 15 depositions of Inso employees.[1] At some later point the United States Attorney became involved. In addition, there was a shareholder class action lawsuit on the same subject.

Literally tens of thousands of documents in the thirty or more boxes must be examined page by page to determine (1) whether they fall within the scope of the subpoena and (2) whether such documents implicate the attorney-client privilege and/or work product. See Director, Office of Thrift Supervision v. Vinson & Elkins, LLP, 124 F.3d 1304, 1306, 1307-08 (D.C. Cir. 1997) (affirming quashing of administrative subpoena to law firm that sought attorney-client privilege and work product protected material). This onerous and time-consuming task is unreasonable and oppressive, ***especially when imposed on a third party***. See U.S. v. Salvagno, 267 F. Supp. 2d 249, 252 (N.D.N.Y. 2003) (quashing defendants' subpoenas to third-parties involved with asbestos abatement projects because subpoenas unreasonable, oppressive and over-broad).

The firm has previously produced, on Inso Corporation's ("Inso") behalf, approximately 10 boxes of documents and 3 compact disks of electronic files to the SEC and/or the U.S.

---

[1] During many of those depositions Wilmer Hale represented Inso as well as the individual employees.

Attorney's Office, all related to the issues in the case. In addition, pursuant to a non-waiver agreement between the U.S. Attorney's Office and Inso on or about February 12, 2003 the firm provided the U.S. Attorney's Office with copies of memoranda and handwritten notes of Inso employees interviewed by Wilmer Hale and/or E&Y.

Much of the material that has been produced to the government is directly relevant to the charges brought against defendant in this case. All of this material has been made available to the defendant. In addition, the firm has agreed to make available to the defendant all deposition transcripts in the SEC investigation and our communications with the SEC. Aside from the documents made available already, it is believed that most of the documents in the approximately 30 remaining boxes are protected by the work product doctrine or are privileged communications between the firm and its client.

Thus, the categories of documents now sought in defendant's subpoena appear not to go to the underlying relevant facts, but rather to Wilmer Hale's, and its forensic accountants', mental impressions, advice, and work product during the investigation. Such work product and attorney-client privileged material should be protected pursuant to Fed. R. Crim. P. Rule 17. See Director, Office of Thrift Supervision v. Vinson & Elkins LLP, 124 F.3d 1304, 1307 (D.C. Cir. 1997) (quashing subpoena directed to law firm's work product, both fact and opinion based, holding that "[o]pinion work product . . . is virtually undiscoverable); In re Grand Jury Subpoena to Horn, 976 F.2d 1314, 1318 (9th Cir. 1992) (granting attorney's Rule 17(c) motion to quash subpoena that was overbroad and unreasonable because compliance would violate attorney-client privilege).

Other than a broad request in the subpoena for "all documents ... stemming from your investigation ...," the defendant does not specify what types of documents he seeks. Defendant

should not be allowed to use this subpoena to engage in a "fishing expedition" in the hopes that some unspecified document not previously produced to the government will somehow assist his defense. See U.S. v. Myerson, No. 87 CR 796, 1988 WL 36315 (S.D.N.Y. Apr. 13, 1988) (party serving a subpoena must prove that subpoena is "not intended as a general 'fishing expedition'") (citing U.S. v. Nixon, 418 U.S. 683, 700 (1974)); see also U.S. v. Calandra, 414 U.S. 338, 346 (1974) (holding that a subpoena "will be disallowed if it is 'far too sweeping in its terms to be regarded as reasonable' under the Fourth Amendment") (citations omitted). The case law is clear that "Rule 17(c) is not to be used as a discovery method in criminal cases, and '[c]ourts must be careful that Rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16.'" U.S. v. Salvagno, 267 F. Supp. 2d 249, 252 (N.D.N.Y. 2003) (quashing defendants' subpoenas to third-parties involved with asbestos abatement projects because subpoenas unreasonable, oppressive and over-broad) (citations omitted); see Federal Trade Comm'n v. American Tobacco Co., 264 U.S. 298, 305 (1924) ("It is contrary to the first principles of justice to allow a search through all [an entity's] records, relevant or irrelevant, in the hope that something will turn up.").

Finally, Document Request #4 is similarly oppressive and burdensome. The Request seeks: "A legible copy of a document identified as 'work paper e-5/4' concerning Inso prepared by Paul Deeley in or about 1998 or 1999." Although seemingly simple and specific, this request requires another lengthy document-by-document or box-by-box examination of the same voluminous mass of documents in order to find the single document meeting this description. To date, Wilmer Hale does not know what this document is, or where it can be located. Moreover, based on limited additional information obtained from defendant's counsel, the document sought in this request is apparently a document created by E&Y auditors and a copy (with a small part

of the right hand side obscured) is in the defendant's counsel's possession. Defendant has failed to demonstrate why Wilmer Hale should bear the burden of conducting a lengthy and burdensome search for this document which it did not create and cannot identify See, e.g., Federal Trade Commission 264 U.S. at 305.

## II.    Wilmer Hale Is Attempting To Meet Its Reasonable Obligation Under The Subpoena.

In an attempt to meet its obligation with respect to the subpoena Wilmer Hale has provided the defendant access to the following:

1. In response to Request #2, Wilmer Hale will provide for inspection this week, the original unredacted version of defendant's notebook pursuant to defendant's agreement that access to such document will not constitute a waiver of any attorney-client privilege or work product protection. (Previously, Wilmer Hale had provided defendant with access to the original redacted version of this notebook).

2. Wilmer Hale has provided for inspection all interview memoranda and handwritten notes prepared by Wilmer Hale in connection with its investigation for Inso, including interview memoranda and notes prepared by the forensic accountants retained to assist Wilmer Hale. These documents were provided pursuant to defendant's agreement that access to such documents will not constitute a waiver of any attorney-client privilege or work product protection.

3. Wilmer Hale has also provided for inspection all original handwritten notes prepared by Wilmer Hale during interviews conducted in connection with Wilmer Hale's work on behalf of Inso as described in number 2 above. Defendant has previously reviewed approximately half of such notes.

4. Wilmer Hale has provided for inspection all documents produced by Wilmer Hale, on behalf of Inso, to the SEC and/or the United States Attorney.[2]

5. Wilmer Hale will provide for inspection this week copies of all official transcripts of depositions of Inso employees conducted by the SEC; all correspondence between the SEC and the firm; Inso's public filings, and Inso sales forecasts for the relevant time period.

Wilmer Hale is continuing to attempt to provide additional *non-privileged* materials. The documents provided to date have permitted the defendant to inspect a substantial volume of relevant material, while not creating an unreasonable burden on Wilmer Hale and not impinging on the attorney-client privilege or work product protection. However, if the defendant insists upon the full review of all of the thousands of documents within the literal language of the subpoena, the resulting burden in time, expense and inconvenience will be unfair, unreasonable and oppressive, a result precluded by Fed.R.Civ.P. 17(c)(2). See, e.g., U.S. v. Drakopoulos, No. 02 CR 504, 2003 WL 21143080 (E.D.N.Y. Jan. 13, 2003) (quashing defendant's subpoena to third-party seeking all telephone conversations within seven month period because subpoena was overbroad and failed to provide enough specificity regarding material sought). This is especially true because this material has either previously been reviewed and produced to the SEC and/or U.S. Attorney's Office, or implicates the attorney-client, work-product or other applicable privilege. Such privileged or work product protected material should not be subject to the defendant's broad and sweeping subpoena.

---

[2] For example, the SEC requested and/or subpoenaed and the firm produced on behalf of Inso, all documents from 11/1/97 through mid-1999 related to:
(a) All fourth quarter 1998 transactions recorded on Inso's books, but for which Inso did not recognize revenue;
(b) Inso's transactions and communications, including financial documents, with Hong Hong and Chan Hong Saik;
(c) Transaction confirmation and responses relating to any transaction Inso determined to reverse recognition or not recognize revenue;
(d) Agreements and other documents related to relationship between Inso and Information Please LLC;
(e) Inso procedures and policies for processing and handling of sales contract documents;
(f) Inso's revenue recognition practices, policies, trainings, or decisions;
(g) Any diary or calendar maintained by any Inso employee;
(h) Inso's bank statements for December 1998, January 1999, and February 1999;
(i) Audit, review and/or restatement services performed by E&Y; and
(j) Documents collected during the investigation concerning each transaction that was restated in 1998.
All of these documents have been provided for inspection by the defendant.

## CONCLUSION

For all the foregoing reasons, and because the subpoena served on Wilmer Hale creates unreasonable and oppressive burdens, especially in light of the privileged nature of the documents and Wilmer Hale's attempts at reasonable compliance, Wilmer Hale respectfully urges that the subpoena now be quashed.

                                      WILMER CUTLER PICKERING HALE AND DORR LLP

                                      By its attorneys,

                                      */s/*

                                      Jerome P. Facher (BBO # 157240)
                                      Michael R. Heyison (BBO # 232950)
                                      60 State Street
                                      Boston, Massachusetts 02109
                                      (617) 526-6000
                                      (617) 526-5000 (Fax)

Dated: February 9, 2005

US1DOCS 4962175v2