UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) CRIMINAL NO. 03-10344-DPW |
| BRUCE GORDON HILL, | ) |
| | ) |
| Defendant. | ) |

**<u>NOTICE OF SUBMISSION OF REDACTED INDICTMENT</u>**

Pursuant to the instructions of the Court, the United States submits herewith a redaction of the Second Superseding Indictment in the above-captioned case.

In this redacted version, the Counts of the Indictment are labeled by letter, and correspond to the numbered counts of the Second Superseding Indictment, as follows:

| <u>Original</u> | <u>Redacted</u> |
|---|---|
| Count 1 | Count A |
| Count 3 | Count B |
| Count 4 | Count C |
| Count 6 | Count D |
| Count 8 | Count E |
| Count 9 | Count F |

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

dated: May 23, 2005

By: /s/ Paul G. Levenson
PAUL G. LEVENSON
Assistant U.S. Attorney
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3147

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) ) ) |
| v. | ) ) CRIMINAL NO. 03-10344-DPW |
| BRUCE GORDON HILL, | ) ) ) |
| Defendant. | ) ) |

**INDICTMENT**

COUNT A

(Fraud in Connection with Purchase or Sale of Securities)

1.   On various dates between in or about September 1998 and in or about January 1999, in the District of Massachusetts and elsewhere,

BRUCE GORDON HILL

defendant herein, knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange, did directly and indirectly use and employ manipulative and deceptive devices and contrivances in connection with the purchase or sale of a security in contravention of Rule 10b-5 (17 C.F.R. Section 240.10b-5) of the Rules and Regulations promulgated by the SEC by (a) employing devices, schemes and artifices to defraud, (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading, and (c) engaging in acts, practices and courses of business which would and did operate as a fraud and deceit, in connection with the purchase and sale of securities.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a) [Securities Exchange Act of 1934, Sections 10(b) and 32] and 17 C.F.R. §240.10b-5 [Exchange Act Rule 10b-5], and Title 18, United States Code, Section 2.

COUNTS B - C

(Wire Fraud)

2. On or about the following dates, in the district of Massachusetts and elsewhere,

BRUCE GORDON HILL,

defendant herein, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, to wit:

| | | |
|---|---|---|
| Count B: | December 30-31, 1998 | Fax transmission from Penang, Malaysia, to Boston, Massachusetts depicting a check, in the amount of 11,552,000 Ringgits. |
| Count C: | December 29-31, 1998 | Telephone conversations between BRUCE GORDON HILL, in Penang, Malaysia, and others known to the Grand Jury in Boston, Massachusetts, concerning arrangements for issuance of letters of credit. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT D

(Material Omissions and False Statements by Corporate Officer to Accountant)

3.  In or about January 1999, in the district of Massachusetts and elsewhere,

BRUCE GORDON HILL,

defendant herein, being an officer of an issuer of securities regulated under the Securities Exchange Act of 1934, to wit, Inso Corporation, did directly and indirectly falsify and cause to be falsified books, records and accounts of Inso Corporation, and did directly and indirectly, make and cause to be made materially false or misleading statements, and did omit to state, and caused another person to omit to state, material facts necessary in order to make such statements, in the light of the circumstances under which such statements were made, not misleading, to an accountant: (1) in connection with an audit or examination of the financial statements of the issuer required to be made pursuant to the rules and regulations of the Securities Exchange Commission under the Securities Exchange Act of 1934; and (2) in the preparation and filing of documents and reports required to be filed with the Securities Exchange Commission under the Securities Exchange Act of 1934.

All in violation of Title 15, United States Code, Section 78m(b)(5) and 78ff [Securities Exchange Act of 1934, Sections 13(b)(5) and 32], 17 C.F.R. §§240.13b2-1 and 240.13b2-2, and Title 18, United States Code, Section 2.

COUNT E

(Perjury)

4. On or about September 6, 2000, in the District of Massachusetts and elsewhere,

BRUCE GORDON HILL,

defendant herein, having duly taken an oath before a competent tribunal, officer, and person, in a case in which a law of the United States authorized an oath to be administered, that he would testify, declare, depose, and certify truly, willfully and contrary to such oath stated material matters which he did not believe to be true, that is, BRUCE GORDON HILL, having been duly sworn by an official of the United States Securities and Exchange Commission, did testify as follows:

> Q      Let me rephrase my question. I think I'm going to short-circuit the answer, if I may, and just ask you when you anticipated . . . that the wire was necessary to replace the check.
>
> A      At some point in January when the check had been presented and outstanding for some period of time, negotiations continued to resolve [sic] around the letters of credit. I began to have concerns about, A, the ability of the check to clear through the Malaysian banking system, the original issue raised by Hong Saik. And as time went by, whether -- in fact, irrespective of whether those were the reasons whether Hong Saik -- Hong Saik would manipulate the check process in order to ensure that payment was not made until the letters of credit were issued.

In actuality, as BRUCE GORDON HILL well knew, at or about the time he received the check, on or about December 30-31, 1998, he learned that the check was not intended as actual payment for the September 30 purchase order, but that a wire transfer of funds would be used for that purpose. Further, as BRUCE GORDON HILL well knew, arrangements for a wire transfer commenced within less than one week after the check had been presented.

All in violation of Title 18, United States Code, Section 1621.

COUNT F

(Perjury)

5.     On or about, November 9, 2000, in the District of Massachusetts and elsewhere,

BRUCE GORDON HILL,

defendant herein, having duly taken an oath before a competent tribunal, officer, and person, in a case in which a law of the United States authorized an oath to be administered, that he would testify, declare, depose, and certify truly, willfully and contrary to such oath stated material matters which he did not believe to be true, that is, BRUCE GORDON HILL, having been duly sworn by an official of the United States Securities and Exchange Commission, did testify as follows:

> Q     Did you instruct Mr. Levitt to prepare the documents that FleetBank would need for the letters of credit?
>
> A     I think what I said to Jon was, "You need to work with Betty to document this transaction". My experience with banks has been that typically they use their own form documentation so it would be more a question of him reviewing documentation but yes, assisting in the preparation of documents for this transaction.
>
> Q     At some point in your conversations with Betty Savage and Jon Levitt, did they inform you about some of the documentation that Fleet required?
>
> A     I recall that there were discussions about ancillary documentation apart from the letters of credit themselves and I believe it was around one of those conversations that I said to Jon, "Whatever authorization approval you need from me to facilitate these transactions, you have it".
>
> * * *
>
> Q     Did you tell him that whatever documents he could execute as assistant secretary, he could go ahead and do so?
>
> A     I think what I said to him was more general than that, it was probably -- the substance of it was, "Jon, whatever approval you need from me", you know -- I may have even have said to him, "Whatever documents you need to execute on my behalf, go ahead and do it".

Q	And did you tell him to use your signature stamp in order to do that?

A	I may well have done so, I don't specifically recall saying that but I may well have done so.

* * *

Q	When you talked to Mr. Levitt or Betty Savage about the documentation needed for the letters of credit with FleetBank, did either of them inform you that FleetBank required an opinion letter and a certificate of secretary?

A	I don't recall that they did.

Q	Did you instruct Jon Levitt to prepare an opinion of counsel letter for your signature?

A	I don't specifically recall that I did.

Q	Did you instruct him to prepare a certificate of secretary for his signature as assistant secretary?

A	I don't recall that I did, no.

Q	Does your answer mean that you don't know one way or another or that you think you did not?

A	I don't have a memory of any conversation of that type. The conversation I can remember is the conversation I've already described where I said to Jon, in effect, "If you need my approval, my authorization to", you know, "get any documents prepared or executed, you have it". I don't remember any specific conversation about what precisely those documents were other than that there was an actual, I believe, letter of credit sent to me and that maybe that I remember that 'cause I've seen it in these proceedings but that's a document that I do remember seeing and discussing.

Q	In conversations with Betty Savage or Jon Levitt, did either of them read, to you, a board resolution that was part of a certificate of secretary for FleetBank?

A	I don't recall that they did, that either of them did.

Q	Did they read, to you, a certificate of secretary?

A	I don't recall that they did.

Q	We, I believe, looked at a certificate of secretary the last time you were --

A    Yes.

Q    -- here, do you remember that?

A    Yes, I do.

* * *

Q    Let me hand you what was previously marked as Exhibit 177, which is the two documents which we looked at before when you were here. The first three pages is a letter to FleetBank and the last page is a certificate of secretary, do you agree with that?

A    Yes.

Q    And referring to the first three pages, the letter, did Jon Levitt or Betty Savage paraphrase and or read to you this letter?

* * *

Q    Why don't you answer whether they read it to you verbatim first?

A    I do not have a recollection that they read these documents to me.

Q    Did either of them paraphrase the first three pages of this Exhibit for you over the telephone while you were in Malaysia?

A    The memory I have is that Jon, in the context of one of the conversations I had, informed me that there were certain documents that would need to be executed and I believe that that's the extent of any paraphrasing I remember.

* * *

Q    Item one contains a board resolution --

A    Yes.

Q    -- do you see that?

A    Yes.

Q    Did anyone read that resolution to you verbatim over the telephone while you were in Malaysia?
A    Again, I don't have a memory that they did, I would say, obviously, what I said before, which is, I was operating, again, after a long trip without a lot of sleep but I don't have a memory that this document was read to me.

8

> Q     Did Mr. Levitt tell you that he was not comfortable, signing his name to a certificate of secretary and had prepared it for your signature instead?
>
> A     I do not recall that he did.
>
> Q     Do you recall any document that Mr. Levitt said he was not prepared to sign relating to the letters of credit?
>
> A     No, I do not recall, I do not have a recollection of any such document.
>
>                \* \* \*
>
> Q     Did you review any documentation that required your stamp or signature while you were in Malaysia?
>
> A     I do not recall that I did. As I said, I received some documents by fax, one of which I think was the letter of credit and another document may have been a draft of the distribution agreement associated with the letters of credit but other than that, I don't recall any other documents were sent to me.
>
> Q     Were any documents reviewed with you verbally over the telephone pertaining to the letters of credit?
>
> A     I believe I had conversations with Jon and with Betty and possibly with both of them about both the distribution agreement and the letters of credit themselves.
>
> Q     In those conversations, did you review any of the documentation with them?
>
> A     Any documentation other than those two documents?
>
> Q     Yes.
>
> A     I don't recall that I did, no.

In actuality, as BRUCE GORDON HILL well knew, while he was in Malaysia in December 1998, he had a telephone conversation with an Inso attorney who informed him that Inso's bank requested a Certificate of the Secretary of Inso Corporation and Opinion of Counsel in connection with the Letters of Credit that were being issued for Mr. Chan's benefit. The Inso attorney read to BRUCE GORDON HILL the substantive text setting forth the Opinion of

9

Counsel and discussed the Certificate of Secretary. The Inso attorney expressed concern to BRUCE GORDON HILL about language in the certificate which asserted that Inso's Board of Directors had acted to authorize the issuance of the letters of credit, when there had been no such action by the Board of Directors. BRUCE GORDON HILL approved that text and authorized the Inso attorney to use Hill's signature stamp to affix his signature on the Certificate of Secretary.

All in violation of Title 18, United States Code, Section 1621.