UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 03-10344-DPW |
| BRUCE GORDON HILL, | ) ) ) | |
| Defendant. | ) ) | |

STATUS REPORT

Pursuant to the Court's order, the United States submits this report regarding the current status of the above-captioned case.

1.  Status of Co-Defendant Graham Marshall

According to the United States Embassy in London, the Bow Street Magistrates Court (i.e., the court that hears extradition cases in the United Kingdom) ruled on August 19, 2005, that Mr. Marshall is extraditable and on that date forwarded the case to the Home Secretary for decision as to whether to surrender the fugitive. Assuming this information is accurate,[1] the Home Secretary has until October 19, 2005, to make his decision.

In light of the Court's direction to contact directly the Crown Prosecution Service ("CPS"), undersigned counsel has inquired of the United States Department of Justice Office of International Affairs ("OIA") and has been informed that the CPS is now out of the case – unless the defendant directly appeals Bow Street's decision (which has not usually been the case).

---

[1] The U.S. Department of Justice Office of International Affairs notes that the reported ruling of the court was ahead of the anticipated schedule, which is somewhat unusual in such matters. Accordingly, undersigned counsel has requested confirmation of the information.

Undersigned counsel has further been informed that he may <u>not</u> contact the Home Office of the United Kingdom, because the Home Office is now a neutral party in the case.

Undersigned counsel is informed that there are several possible scenarios at this point. According to the OIA, the most likely estimate for Marshall's actual return to the United States anticipates a delay that could range from as little as a few weeks to a maximum of three months.

In ruling that Mr. Marshall is extraditable, the Bow Street Magistrates Court allowed his solicitors until September 30, 2005, to submit "representations" to the Home Secretary as to why he should not be surrendered to the United States. Under the applicable treaty, Mr. Marshall is limited in the arguments he may make to the Home Secretary in those "representations." The most likely challenge would be a contention that the United States will violate the rule of specialty and subject Mr. Marshall to prosecution for crimes beyond the scope of his extradition. If Mr. Marshall makes representations, the Home Office will ask the United States to respond. Neither the U.S. Attorney nor this Court will be involved in that process; which is deemed a treaty matter by the United States Department of State. In such cases, it is common for either the Home Office or the defendant to request an extension of time in which to prepare and/or to respond to representations.

If the Home Secretary decides in favor of extradition, he will sign a surrender warrant and the defendant will be returned to the United States.

The Home Secretary's decision is subject to judicial review and the defendant may ask the High Court to review the Home Secretary's decision. Review is limited to narrowly defined treaty issues (rule of specialty, death penalty, onward extradition) so there would appear to be little likelihood that the High Court would overrule the Secretary. However, the Extradition Act

is new, and according to OIA there has been no experience to date with such judicial review in connection with an extradition to the United States.

In theory, if the High Court upholds the Secretary's decision the defendant may seek review by the Privy Counsel of the House of Lords. However, like the United States Supreme Court, the Privy Counsel hears a limited number of cases. Also, in theory, the defendant could seek review by the European Court. This has not yet occurred in a United Kingdom extradition case and it is doubtful that that court would hear this case.

Under a slightly different scenario, Mr. Marshall could also seek High Court review of the Home Secretary's decision to sign a surrender warrant, even if he has not made representations to the Home Secretary. Because the Extradition Act is still new, it is difficult to assess whether this is a plausible alternative.

The defendant may also immediately seek review by the High Court of Bow Street Magistrates Court's decision. Again, if he does not prevail in the High Court, he could, in theory, appeal to the Privy Counsel. The pendency of such an appeal would effectively stay the Home Secretary's decision making process.

2      Speedy Trial Issues

The Court has directed the United States to address the exclusion of time, for purposes of the Speedy Trial Act, attributable to the anticipated delay in securing the extradition of Mr. Hill's co-defendant, Graham Marshall.

The starting point for the analysis of this issue is the statute itself. Under the Speedy Trial Act, the Court is required to exclude, "in computing the time within which the trial" of an offense mus commence . . .

>(7) A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.

18 U.S.C.A. § 3161(h)(1), (7).

Thus, the Speedy Trial Act attributes to Mr. Hill any reasonable delay attributable to his codefendant, Mr. Marshall.

Section 3161(h)(3)(A), in turn, excludes from computation of time "any period of delay resulting from the absence or unavailability of the defendant." A defendant is considered unavailable "whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial." This statutory language plainly encompasses a defendant, such as Mr. Marshall, who has refused to return to the United States voluntarily and who is contesting his extradition. Although Mr. Marshall has been indicted, his speedy trial clock will not begin to run until he is apprehended and has appeared before this Court. See 18 U.S.C.A. §§ 3161(c)(1).

Undersigned counsel has identified a few cases in which these provisions of the Speedy Trial Act were applied to situations where a defendant contested the exclusion of time attributable to delays in securing the extradition of a co-defendant from a foreign country.

United States v. Van Schiem, No. 89 Cr. 813 (KMW), 1990 U.S. Dist. LEXIS 3600 (S.D.N.Y. 1990), addresses questions of speedy trial rights and joinder in circumstances similar to those in the matter at bar. In Van Schiem, the defendants sought a severance from a co-defendant whom the government was attempting to extradite from Belgium. Because the co-defendant awaiting extradition had not yet been arraigned, "the speedy trial clock ha[d] not begun to run for any of the defendants." Id. at *4. However, because exclusions of time for co-defendants' proceedings are subject to a reasonableness standard under Section 3161(h)(7), the

district court was constrained to weigh carefully the pertinent considerations for assessing what is reasonable in this context.  As a starting point, the court noted that "[t]he Speedy Trial Act was not meant to change the rules applicable to severance. . . .  Thus, the reasonableness of any delay caused by [the co-defendant's] pending extradition must be assessed in light of the strong presumption in favor of joint trials."  Id. at *5 (internal citations omitted).  Because the defendants were not incarcerated, and because there was no showing of actual prejudice to their defenses, the court found that the ongoing delay associated with the co-defendant's "absence is reasonable, and will not become unreasonable in the near future."  Id. at *9.

In United States v. Hayes, 40 F.3d 362, 364-366 (11th Cir. 1994), the Eleventh Circuit addressed the speedy trial issue – albeit under a "plain error" standard of review.  In that case, the pertinent period of delay amounted to roughly five years and much of the delay was occasioned by the government's efforts to secure the assistance of authorities in Zimbabwe to arrest and extradite a co-defendant.  The Court in Hayes found – after reviewing the array of statutory and constitutional issues associated with the right to a speedy trial – "that [the defendant's] right to a speedy trial was not violated."  40 F.3d at 366.

Last week the Eleventh Circuit relied on Hayes in rejecting a Speedy Trial Act claim by a defendant whose co-defendant had not yet been extradited at the time his trial began. The Court found that . . .

> in a case involving multiple defendants, the speedy trial period begins to run when the last codefendant is indicted or first appears before a judge or magistrate judge. Henderson v. United States, 476 U.S. 321, 322 n. 2 (1986). Because Faller's codefendant Adam fought his extradition to the United States, and had not yet appeared before a judge when Faller's trial began, the Speedy Trial time limit never began to run. Thus, there was no violation of that statute.
>
> Nor is there error with regard to Faller's constitutional speedy trial claim. The government's attempt to apprehend a codefendant is a constitutionally valid

>justification for delaying the trial of an available defendant. United States v. Hayes, 40 F.3d 362, 365 (11th Cir.1994).

United States v. Murray, 2005 WL 2360682 (11th Cir. Sep. 27, 2005) (unpublished opinion).

In United States v. Lewis, 349 F.3d 1116 (9th Cir. 2003), the Court noted – with apparent approval – that much of the delay at issue in that Speedy Trial Act appeal was excluded pending a co-defendant's extradition. 349 F.3d at 1119. In that case, however, the Court did not have occasion to weigh the issue of reasonableness, since it found that a subsequent delay – after the extradited co-defendant had pled guilty – violated the Act.

In United States v. Renda, No. 87-20049-01, 1987 U.S. Dist. LEXIS 10373 (D. Kan. 1987), the court considered a "'final hour'" request by the government for a continuance, shortly before a scheduled trial. The government asked for the additional time in order to commence efforts to extradite one of two absent co-defendants. Under these circumstances the court in Renda eschewed any mechanical application of Section 3161(h)(7) and rejected a the government's request to stay a scheduled trial – and stop the Speedy Trial clock – while the government began extradition effects.

What emerges from these cases is that diligent government efforts to secure the appearance of a co-defendant may indeed serve as an appropriate basis for excluding time under the Speedy Trial Act. Because Section 3161(h)(7) requires an inquiry into "reasonableness," however, the exclusion of time is not automatic.

While the First Circuit does not appear to have specifically addressed the issue of delays associated with extradition of a co-defendant, it has addressed, more generally, the issue of "reasonableness" in cases involving delays attributable to co-defendant proceedings. For example, in United States v. Vega Molina, 407 F.3d 511 (1st Cir. 2005), the Court addressed the reasonableness of an eighteen month delay attributable to co-defendant proceedings:

> We are not unsympathetic to the appellant's position; eighteen months is a considerable period of delay. But that delay is not, in and of itself, sufficient to establish a Speedy Trial Act transgression. See United States v. Muñoz-Amado, 182 F.3d 57, 62 (1st Cir.1999) (holding that a nineteen-month delay, standing alone, was not sufficient to constitute a speedy trial violation). And here, the delay was not unreasonable.
>
> This was a complicated case involving a variety of charges, a multiplicity of defendants, witnesses, and lawyers, and a protracted trial. The case called for experienced counsel, and lawyers who fit that bill often have busy trial schedules. We review the trial court's excludability determination for abuse of discretion. . . . Given this generous standard of review and the strong presumption that jointly indicted defendants should be tried together--a presumption that rests in no small part on the public interest in the efficient administration of justice . . .--the trial court's decision seems well within the realm of reasonableness.

407 F.3d at 532 (internal citations omitted).

This Court is well-acquainted with the length and complexity of the retrial that will be required in this case. In light of the progress that has been made in perfecting Mr. Marshall's extradition, and in light of the "strong presumption that jointly indicated defendants should be tried together," any understanding of the notion of "reasonableness" suggests that there is room, under the Speedy Trial Act, to try this matter twice rather than three times.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

dated: October 3, 2005

By: /s/ Paul G. Levenson
PAUL G. LEVENSON
Assistant U.S. Attorney
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3147

*ELECTRONICALLY FILED*